The only case that we're going to hear today is 2014-1329, TransUnion Intelligence v. Search America. Judge Plager, are you here? Oh, did I say the wrong case? Oh, I said the wrong case. I did prepare for your case. 2014-1390, Southco, Inc. v. Fivetech Technology. Judge Plager, are you on the line? I am, ma'am. Thank you very much. Very good. Okay. Mr. Leath, am I saying your name right? You are, Your Honor. All right. Good morning. May it please the Court, this case should not have been resolved on summary judgment. Southco's raised several issues on appeal that require reversal of the district court's grants of summary judgment. So I've been struggling with the word attached, as crazy as that sounds. And so at first I was thinking, well, my hand is not logically attached to my shoulder, right? Plain speak. Nobody would say your hand is attached to your shoulder unless it was like this. It just doesn't make any sense. Your hand's attached, you know, like the kids song, your knee bone connected to your thigh bone sort of thing. Knee bone not connected to head bone. Like, it just doesn't work in terms of attached. But then my clerk pointed out to me, well, what about if you're bungee jumping off a bridge? I'd like to think I'm still attached to the bridge. I said, well, yeah, that does make sense. So I'm trying to figure out what the word attached means in plain speak. Forget about what the patent says. So does the word attached mean there has to be a direct connection? And if not a direct connection, do they at least have to be touching somehow? What does it really mean? Your Honor, it means connected or joined. And they don't have to be touching. And when the patentee wanted to say there was contact or there was touching in Claim 1 of the 095 patent, it said the annular surface of the screw head makes contact with the furrow. So when the patentee wanted to say there was actual direct contact, the patentee chose to do that. So the attachment here can be direct or indirect. Well, I don't know that I think that that distinction works. I understand your differentiation-type argument. But the difference is he wanted to say rotatably and slidably, and he wouldn't say rotatably and slidably, ultimately touching. Like, it would just be a weird – it might be in this case, given the words that preceded the word attached, it wasn't so easy to come up with a way other than the word attached to say in direct connection. I'm not sure that it's as clear to me that he meant two separate things. Because I can't think of a way to word that limitation with the rotatably and slidably thing with the same kind of language he used for touching. Well, we can think of the captive screw as operating in different positions as well. And it's only in one position that there would actually be physical contact. When it's up. Exactly. When it's extended out and it's compressed or in a tracted state, there wouldn't be contact anyway. And the rotatably and slidably attached is really talking about the relationship between the furrow and the knob. And those two, for argument's sake, cylindrical or tubular structures have a relationship that keeps them attached. And in the captive screws, the knob is also not independent. The knob is a system with the screw. It's a knob screw assembly. And that's why the attachment is important, that it's not limited to this direct attachment. Did Southco make any tests or measurements on the accused products? Your Honor, that's kind of a temporal question. So Southco has made tests. They put in some torque tests when they were talking about the knob being rigidly secured. That's for your employee? Yes, it's the employee, yes. That's it? Well, we're limited by the record, Your Honor. They sell products that work, and those products have to meet standards. But for purposes of infringement, and we're talking about the rigidly secure term now. My question was test. You say they make products that sell, work, and meet standards. That's not a test. Well, Your Honor, we're limited by the record. So there's the only record, and that's for the rigidly secure. Now, Southco's expert made tests of the Fivetech product and determined his position on infringement. But if you're referring to rigidly secured, it was by the employee, I'm sure Fraterola. Let me ask you, since you mentioned the Southco expert, I don't want to jump you too prematurely to that other issue with the annular chamfer. But if it's okay, I'd like to ask you about the expert declaration. So district court judges have a lot of discretion in determining what's going to be admissible and when and controlling their calendar and that sort of thing. I would be considerably more troubled by your appeal had you moved under 56D for additional discovery. But you didn't move, right? You didn't. I mean, I understand. It's unfair you didn't get a chance to cross-examine their expert. And I understand the scheduling order set out a schedule they didn't abide by and the rules, federal rules of the standard practice they didn't abide by and all of that. But the district court judge nonetheless said, I'm going to go ahead and let it in. And I don't know. How do I handle that? Why don't you address for me why you think I ought to reverse that very discretionary decision? Sure. So the first error made is that the district court didn't follow the Pennypack factors, which in the Third Circuit would govern when this type of evidence could come in. At best, the judge only addressed the prejudice and attempted cure with the declaration. Now, procedurally, SouthCo wasn't obligated to ask for discovery. But in their papers, when they objected, they pointed out the lack of ability to take testimony, to take discovery from this expert, which, by the way, was submitted one month before trial. But you have to agree, right? That's the only prejudice you have is the inability to take discovery. So had the district court said, rather than just allowing the declaration, had they said, okay, I'm going to allow the declaration, but I'm going to reopen discovery for two weeks, and notice the deposition during this time, and you need to make that expert available, because I agree, especially given that he did this testing, there needs to be an opportunity to cross-examine him. Wouldn't that have really obviated your ability to come to this court and at that point complain about the Pennypack factor? Because I don't see how they would have weighed in your favor then. I'm not saying they don't now, but had you been given that opportunity, I don't see how you could have been heard on a penal. Well, I'll make an argument for that, Your Honor. The prejudice still would have been the delay of the trial, when you're a month away from trial in this case. District court judges have an enormous amount of discretion in this sort of scenario. So if the district court judge then had pushed the trial back, and for whatever reason that happened, it could happen because they have a criminal docket coming up. But if they had pushed the trial back, instead of compressing the discovery to put all these new issues in one month before trial, all of the testing, all of the evidence that was put forth by Dr. Dornfeld came up at the last minute. Summary judgment came out of nowhere because they didn't have an expert at that point. So if the scenario was that a district court judge was going to give us additional time to do discovery and push other dates back, then I'd have to agree with you there would be less prejudice. But you didn't ask for the additional discovery. That's part of the problem. We look at that as putting the victim ahead there. It wasn't our burden. We had followed all the rules. We were preparing for trial. We didn't have any of this evidence. We pointed out the problems to the district court when we made the motion to strike the declaration, and the district court didn't award, didn't grant us that relief. The district court only granted a rebuttal declaration as relief, which didn't account for those other areas. Mr. Lee, let me ask you this. In support of its attached position covering direct and indirect, you pointed to excerpts from 095. The screw is attachable to the first panel, and the screw is used for attaching the first panel to a lower surface having a threaded hole. How do those describe an indirect attachment? So the indirect attachment, when the screw, the first one, which is the screw is attachable to the first panel, that the screw is attached to the panel through the ferrule and through the connection, it's attachable to the panel. But it doesn't actually touch the panel. There's a gap, right? Look at Figure 2 or Figure 3. Yes. The first panel is 60. The slash lines don't continue on 60 all the way to the screw. So is your argument that the screw is described to be attached but actually doesn't come in contact with? Yes, it's not in contact with the first panel. It's secured into the second panel. But nonetheless, the line in Column 1 says it's attachable to the first panel. Right, and they use the word attachable. So even though it's not directly connected to the first panel. Exactly, Your Honor. That's your argument? And that is, and that's the argument for the second one, whereas the first panel is attached to the second panel. It's attached to the second panel because of the connection of the captive screw, not because they're just in contact with each other. If they were in contact, they could slide off, they could fall apart. They're not attached. They're not joined or connected. It's the screw through the panel. Would this be an example of your argument, a better example than I was, you know, with my knee bone, thigh bone stuff? Would it be that the button on your shirt is attached to your shirt? It's not attached on its own. It's attached by virtue of the stitching. Yes, Your Honor. But it's attached. Yes, and I think of an example of a chain. You know, you can have two things connected by a chain, and you can have one link, you can have ten links that are still connected. And the button example fits very well. I don't know. I would think the indirect attachment would be if it was nailed. Counsel, don't you have a problem with indefiniteness? The fact that we have to spend all this time trying to figure out whether these two things are attached in some mystical manner of indefiniteness, of, you know, indirectness or whatever. Isn't there a problem here with the indefinite claim term? No, Your Honor. We don't believe there is. And a word like attach and talking about the mechanical relationship of pieces being joined together, that really isn't. That's, you know, we think of that more as a smokescreen that's being thrown up. But, unfortunately, there was error at the district court in the ruling. But we don't believe there's indefiniteness there. And the issue on appeal is really, is there anything that would cause attach to have any less, any more limited reach than it does as a word? And through the examples that we've talked about, there's certainly no express, you know, description in the specification. There's no express disavow. Those are the hallmark tests for when the term should be limited from its plain and ordinary meaning. But just to be clear about what you're asking this court to do, you're asking us to reverse a grant of summary judgment of no infringement. You're not asking us to alternatively grant summary judgment of infringement, correct? We are not. This was a motion that both, all of the motions in this case were motions made by Fivetech. And Sealthco's only obligation was to defeat the motion for non-infringement, not put on an affirmative case of infringement. So we're only asking that the summary judgment be reversed and be remanded back to the district court. Because, so I guess here's why I ask. So I could imagine, and I'm beginning to feel as though maybe this, part of this is a claim construction issue, whether or not attached can include indirect attachment. And maybe there are some circumstances in which it can, the shirt and the button, the chain, the things that we've been talking about. I realize the red brief is your opponent's brief, but the way in which he has the pictures at the top of the knob and the ferrule on page 11, when I'm looking at those color pictures, that knob, when the screw is in its extended out position and not screwed in, is at least in the picture, not at all touching the ferrule. And I don't know, I'm looking at that and saying, I sure don't think that I can decide that those two things are necessarily attached in terms of the infringing device. So would you say this is one of those instances where a question like that should be given to the jury? Maybe you'll tell me that this picture isn't sort of an adequate depiction of what they do. I don't know. What is your response? Well, certainly, at worst, it's something that should be given to the jury to decide to see if it is attached. That's a factual question once we get past the claim construction issue. As I stated earlier, that the... Because the fact that two items are in series together, ultimately, right? I mean, there might be 20 components between them. Maybe the jury would conclude that those two items are not attached because they're separated by so many different things. I feel like maybe, as long as you're not asking me to say any time two things are ultimately somehow connected, no matter how many things are in between, they're therefore attached. I feel like that would be too broad a reading of attached. And we're not asking for that. We're just asking that it not be limited to a direct attachment. This is more along the lines of the G.E. Holdings case where an attachment was not limited to be an external attachment, just by the use of the word attached in the case. You are well into your rebuttal time. We'll restore your rebuttal time, but let's give Mr. Rhodes a chance. Thank you, Your Honor. Good morning, Your Honors. Well, I guess I'll begin by addressing the captivation means and why the district court's claim construction was correct on that issue. The limitation issue is actually the captivation means. What actually keeps the screw from falling out of the ferrule? That's the objective. And I'll refer again to page 11 where you just were in our red brief. I feel like I have to go back and do a little bit of explanation on exactly how a captive screw works. So we have the ferrule, which is attached to the panel, and then you have the screw that goes into the ferrule. And the idea is you have to keep the screw from falling out of the ferrule. So how do you attach, keep that captive screw? That's what we mean by captive screw. So Vitex products use a washer on the screw shaft to hold it into the ferrule. Now, the captivation means limitation in the claim resides two structures. For forming that captivation means a knob and a ferrule. And the way they do that is they have corresponding flanges so that when the screw is in the unretracted position, the flange on the knob engages with the flange on the ferrule to keep it from falling out. Well, in the Vitex product, they don't do that. They use a washer to retain the screw in the ferrule. It doesn't matter if there's a knob on the screw head or not. So in effect, what Southco is arguing is that when you have this captivation means limitation that resides structures for forming the captivation, the knob and the ferrule, the knob is not necessary. It can be ripped completely out of the claim. Did you ask the district court to construe captivation means? We did, and there's no doubt that she did. But you're not, just to be clear, to make sure I'm not misunderstanding you, you're not saying that when we are looking at whether slidably and rotatably attached, you know, the ferrule and the knob, that that's part of a means clause and that thereby they're limited to the structure disclosed in the spec and equivalents thereof. You're not arguing that, right? Well, I'm not. Well, there's only one claim where it was a means plus function. Right, but in terms of claim one, which is what I'm looking at, you're not suggesting that captivation means swallows the attached word and thereby limits it to a 112-6 form of construction. No. Right, okay, good, because that would be a bad thing to argue. Yes. Okay. No, I'm not arguing that at all. I'm just saying that the plain meaning of the way the claim language works, it requires two structures for performing the captivation means, and we don't have one of those structures. We don't use the knob to capture the screw and the ferrule. We don't. And under their construction, it makes that term superfluous. I don't fully understand it. You want to try again? Really? Yeah. Okay. Try one more time. Why is it that the captivation, because, I mean, I really thought that most of this case is about the word attached, but what you're really telling me is if I give attached the meaning that they want it to have, that it will mess up the captivation means construction, or that it will make it… Well, they're trying to stretch this claim to cover a situation where the knob doesn't participate in the captivation means. In the Fivetech product, the knob plays no part in capturing the screw and the ferrule. So I know in their brief they argued that the district court didn't construe captivation means, and in fact she had a perfectly good understanding of what she was doing. At A7 of the record of the appendix. You know, the court goes to great lengths to identify the language that she's looking at. She underlines it. So she underlines that a threaded shaft captivation means, said thread shaft captivation means adjacent to second end, wherein the second end of the ferrule is slightly and rotatively attached to the knob, such that when the threaded shaft is in a retracted position, the threaded shaft captivation means prevents the ferrule and the knob from separating. So you have this interaction between the knob and the ferrule, which holds the screw and the ferrule. Now they want to have a construction of that claim limitation. The captivation means that doesn't require the knob to participate in capturing the screw and the ferrule. And that just cannot be. Otherwise, it makes the knob limitation superfluous. It's not necessary. Why wouldn't in your device the washer, knob, screw, and ferrule all function together as the captivation means? Because the knob plays no part in capturing the screw and the ferrule. You could break the knob off and it would still be retained in the ferrule with the washer. Well, you could. No, you can't. In the Southcote product, you can't.  I am now wishing that I'd actually brought one of the products with me to make this clearer. But if you look at the specification that we were just looking at, you can see that the flanges interact between the knob and the ferrule, and that's what performs the captivation means. If you break the knob off of the Southcote product, there's no longer any way for that screw to be retained in the ferrule. In the Fivetech product, you don't need the knob. It plays no part in capturing the screw and the ferrule. And under that scenario, there's no infringement. Keep going. Keep going, okay. I just want to make sure that we're clear on exactly how the captive screw functions so that there's no misunderstanding that the knob just does not play any part in capturing the screw and the ferrule. Why are we arguing over it catchably? I feel like you've moved the argument. That's why I'm back and forth with my law clerk because this isn't what I understood the district court to have decided on summary judgment, what you're saying now. I'm not saying you're wrong. It just feels like a different issue than the issue upon which you prevailed on summary judgment and the issue that was appealed to us. What you're saying, quite frankly, resonates as probably correct with me, although I'm not entirely sure because I really just didn't look at the case this way. Well, I think you go back and with this understanding, look at what the district court did. I think she did exactly what I'm arguing right now. She clearly didn't. She definitely didn't do it with the clarity with which you're arguing it, that's for sure, if she did do it at all. Well, she did. And I wish she could have been more clear in her language and articulating it. But she did find that the way they wanted to construct the claim… What she didn't say is summary judgment of non-infringement is granted because the accused product doesn't have a captivation mean. That's what you're asking me to say. No, no, no. We have a captivation means. We just don't use the knob as part of the captivation means. But she also didn't say… Did she grant summary judgment on the basis of your failure to use the knob as part of the captivation? She actually uses that example in her opinion. She says, for example, if you break the knob off of the 5-Tec product, the screw will still be captured in the ferrule. Not the case in the SouthCo product because in the SouthCo product, it's the knob-ferrule-flange interface that keeps the screw in the ferrule. So she did exactly what I'm arguing to you right now. And she found that if you construe the claim the way that SouthCo wants, you're making the knob limitation in the claim superfluous. She says that. All right. Well, let me move on to another feature unless you have some additional questions about the captivation means. Why don't you go ahead? Why don't you cover the O-1-2 patent and the annular chamfer,  Yes. Okay. Yes. So if you look at the – I'll start into that by looking at SouthCo's expert declaration first because the declaration that SouthCo submitted as expert report was purely conclusory. Well, but the expert submitted in there – I don't understand. You're saying the expert – their expert was purely conclusory. I thought the problem here is that they – that she allowed in to the summary judgment record and, in fact, based her opinion in no small part on your expert report. She did. She relied on our expert's declaration, which showed that our screw didn't have a chamfer. Yes, but she relied on, in particular, his testing to reach that conclusion. And how is that not expert opinion that would have had to have been offered in rebuttal? It seems that it quite clearly and unequivocally is. I'm not saying district court doesn't have the authority to deviate from both the federal rules in terms of what it sets out as the proper way to go about it as well as her own scheduling order, which is what her allowing you – relying on your expert declaration allowed, but there are limits on her discretion to do that. And how are they not horrifically prejudiced by virtue of her relying on your expert's testing when their argument to me, which sounds awfully factual in nature and, therefore, really problematic for summary judgment, is that we have engineering drawings that show an annular chamfer. They introduce an expert report that claims that when slicing into this thing, which could have, we don't know, affected the shape, his opinion is that the testing that resulted from that showed that there was no annular chamfer and she just accepted that wholesale. And how is that not really troubling when they didn't have any opportunity to depose your expert? They had an opportunity to depose our expert. How? You didn't disclose his opinion, the report. Well, he was identified as our expert. Irrelevant. You didn't disclose your expert opinion. And they had an opportunity to take his deposition. No, they didn't. You didn't disclose his opinion. They didn't ask. What do you mean they didn't ask? They didn't ask. They had an opportunity. The rules of the scheduling order both demanded that you produce an opinion if you intended to rely on one in a certain time period. There is no onus on them to ask you for your opinion. The onus is on you to produce it if you'd like to rely on it. No, they didn't ask for discovery. No, they didn't take any depositions in this case at all. When we got the expert report, we realized it was not a serious case because the expert report that they submitted had no tests. If you're right, then she shouldn't have relied on your expert. But your expert was obviously necessary because it is the basis for her decision. No, I disagree with that. The basis for her decision, yes. Not only did she look at our expert report, yes, and she did rely on it in part, but they have the burden of proof on infringement. They had no evidence. They had no evidence of a chamfer. That's not what she concluded. You may be arguing that to me now. No, she did conclude that. She said they don't have any evidence to meet their burden of proof. They didn't come forward with evidence. All they did was draw a line to the edge and say it's a chamfer. Here's an example. In their expert report, they gave no proposed definition of chamfer. They gave no tests, no analysis. It's purely conclusory. And if we look at, for example, the L-1-2 patent and we go over to And we go to lines 41 to 44, I believe. If I disagree with her conclusion that there was no prejudice to Stout's Co. by your not having filed a rebuttal report, doesn't that unravel her order? No. Why? Because they still had the burden of proof to show there was an existence of a chamfer, and they had no evidence. Why would you say that, in her opinion? All right. In her opinion, is it A-23? I think it's A-34 or 35 is where she moves to determining infringement. Okay. A-36 is the annular chamfer. And she goes through and she says, Stout's Co. must prove that Phytech Series 46 screws do contain a chamfered edge. Phytech uses standard screws. And on A-37, at the start of the last paragraph, Stout there argues that Phytech's demonstrative exhibit used in an earlier hearing showed a chamfered edge. That demonstrative exhibit presented to the court in a PowerPoint presentation during the hearing is not the accused's product. Similarly, Stout's Co. argues that a representative engineering drawing, that the drawing shows the head of the screw has an annular chamfer. Because analyzing these pictures does not assist in comparing the accused's product against the patent claims, this argument does not dispute Phytech's argument that its screw does not feature the chamfered edge. Why is that? Why is she saying that the representative engineering drawing don't assist her to compare? It seems to me that she's saying the drawings aren't the accused's product, right? And they're not. They don't. There's no label on these drawings that say, oh, this is chamfered. They're just drawings. Aren't these the engineering drawings that you use to manufacture your screws? My client doesn't manufacture the screws. They purchase standard screws. But we're just talking about surviving summary judgment. Was there some dispute that these engineering drawings are not the engineering drawings for the products being accused of infringement? Was there some dispute over whether or not they corresponded to that product? Well, I think the issue the court had was that they had the actual screws. She didn't rely on the screws. She didn't say, I have the actual screw. And there is no question that the screw differs from the picture that they presented. And since the screw is the accused product, I do not see anything that could, as a matter of fact, be concluded to be an annual chamfer. Therefore, summary judgment of non-infringement is granted. She didn't rely on the screw. She didn't say, I have the screw. Look here. There's no slanted edge. She didn't say that anywhere. No, they had the screw. But they didn't produce any evidence. They didn't do any tests on the screw to carve it up and measure it. You know, chamfers can be measured. I was making a point earlier at A4575 that Column 3 itself says in the patent that at line 52, a chamfer of 0.25 inches, for example, approximately 15 to 30 degrees has been found to be suitable for most  Chamfers can be measured. They have a length and they have an angle. Normally, in all normal cases that I'm familiar with, an engineering drawing that actually showed a chamfer, if it did, would be sufficient to prevent summary judgment. As a matter of fact, they wouldn't have to introduce an actual physical exhibit of the product as well. Now, if you had introduced a physical exhibit of the product and demonstrated that it conclusively did not correspond to the engineering drawing and that that was, in fact, the product they were accused of infringement, that would have possibly been a different subject. But all they have to do is present a question of fact. And if your expert's testimony was not proper, I don't see how you contradicted that question of fact sufficient to flip summary judgment. All right, well, let's go back. I mean, if we didn't put any expert declaration in at all, they had a complete failure of proof on the chamfer issue. Why? They introduced an engineering drawing that showed one. No, it didn't show one. They just claimed it did. Okay, but what is the basis of that engineering drawing? Is it a manufacturing drawing or is it a utilization drawing for a customer? It's a general drawing. And their expert counsel did say that that engineering drawing showed a chamfer. I don't even know what that is. But there's nothing to back it up. There's nothing on the engineering drawing. It's just a general picture of a screw. And if you look at his expert report, all he does is take a photograph and draw an arrow to the edge of the screw head. These are really small screws. And just label it as chamfer. You know, in order to show that there's a chamfer, you have to take a cross-section and you have to be able to measure it. There's no magnification. There's nothing. There's nothing to back up his claim that it's a chamfer. You might be right about everything you're saying, but that's not at all what the district court judge concluded, at all. And what she did conclude was based entirely on Dr. Dornfeld and his photographs. And, in fact, I have to say the part of her opinion that troubled me the most was the final sentence on 38 standing on to 39, which said, Dr. Pratt's conclusory opinion, because Dr. Pratt said in his rebuttal expert report, look, Dornfeld, we don't know how Dornfeld prepared his samples. He could have caused burrs in the sample. He could have modified the sample when he sliced into it. We don't know how he did it, but Dr. Pratt thinks that there's a problem with the way Dr. Dornfeld conducted. Your Honor, they had the burden of proof. They have the obligation to conduct their own tests. But her only comment, then, is the sentence that bothers me. Dr. Pratt's conclusory opinion regarding the interpretation of Dr. Dornfeld's photographs is not supported by any evidence in the record. How could there have been evidence in the record? They didn't get a chance to depose your guy. They didn't get a chance to do any of that. That's exactly the problem I have. Number one, they had an opportunity, if they'd gone under 56D, to ask for his deposition. They didn't. They don't want to know. That's why they didn't do any tests on the screws themselves. Where is Dr. Pratt's test? Why didn't he test the screws? You know, they should have done that before they ever filed the case. They should have tested the screws and measured the chamfer angle. They could have taken discovery of the screw manufacturer, found out exactly how it was manufactured. There would have been no doubt about whether or not those screw heads When we got their expert report, there was nothing to rebut. There was no analysis. If that's so, you wouldn't have needed to do the testing you did and introduce his report in opposition to summary judgment. Well, you know what, we didn't have to submit his report because they had no evidence to begin with. But that was all she relied on in rejecting summary judgment. So the problem is, you didn't have to, but you did. And then she relied on it, and here's where the problem is. So you're saying they don't want the discovery, that they're complaining about not getting the discovery, they don't want it. So maybe the answer here is to vacate and remand and order her to reconsider this issue after they've had an opportunity to properly depose. Because if that had been given, I would have no problem with this case in terms of her deciding to allow and rely upon the expert report. Under those circumstances, I wouldn't necessarily have a problem with her reliance on the report, had they had an opportunity to have discovery, because it would obviate their prejudice claim. But that's the scenario you're in, is that you've got a problem with the prejudice. Well, again... We've kept you way over, and I feel like it probably isn't very productive at this point. Do you have any concluding thoughts, or is there anything you didn't get to address that you really wanted to by virtue of our monopolizing your time? Well, that's a good question. No, we didn't talk about rigidly secured or Phyllis the Champer or the trademark issues. But they're fully briefed. Okay, well, we have those then. Why don't we give your opponent his rebuttal time and see if we can bring this to a close. Thank you. Mr. Leek, we'll give him three minutes of rebuttal time, please. Your Honor, bad facts make bad law, and that's what we're talking about with the whole expert. Well, bad facts make bad cases, too. That's true also, Your Honor. Why didn't you test? So the question would be a factual question of can a Champer, is it observable by an expert, or does it need to be tested? Of course it's observable. That requires testing. When you say testing, do you mean sectioning? It requires some kind of testing. You could do it in a lot of ways. You could use some sort of feeler gauge. There are a lot of things you could do, but none of those are in the record of having been done. It's simply an observation. None of those are in the record for the rebuttal report for summary judgment. There is an expert report of Mr. Pratt. Yes, and he said this is a Champer and draws an arrow. Again, I'm limited to the evidence on the record. And for purposes of rebutting summary judgment, all South Dakota had to do was raise a question of fact with the evidence that was submitted by Fivetech. We just had to raise a question of fact, as was asked of me earlier. Our burden wasn't to prove infringement. It was only to show that they hadn't proven non-infringement. And I still say this back and forth, this schizophrenia. The expert report was so bad that we didn't need to serve an expert report, yet that's exactly what they did to support their summary judgment motion. You can't have that both ways. So they obviously felt they did. The court called it an expert report. It was not just information to advise the court. It was an expert report. So what South Dakota did was raise enough factual questions regarding what Dr. Dorso said. You can say on appeal, look, this evidence is totally superfluous because the other side's evidence doesn't meet the standard, and therefore the court should affirm anyway. You can do that. That's correct, Your Honor. I agree. But in this case, we had representative engineering drawings, as it came out, where they were provided under court order as representative of the screw. And regardless of whether the screw was an off-the-shelf screw ordered from someone else, it still had an engineering drawing which represented what it was. And that was part of what's confirming Dr. Pratt's position on the screw, on the Chamfer Edge. Will you address the captivation means? Because I think opposing counsel made a very strong case for the fact that in the accused device, the knob is not performing any of the functions associated with the captivation means. So how do we handle that? So South Dakota's position is that the knob screw, once the knob is formed and secured to the screw, it's a knob screw assembly. To address this better, where the district court and my colleague at the bar talked about if the knob broke off, the captive screw wouldn't be captive. Well, there's nothing in the patent specification that talks about an absolute failure of the knob. What's being protected against with one of the embodiments is a failure of the knob when it's rotationally released from the screw, as if it was over-torqued and it released from the screw head. And one of the embodiments still, by using the fill space in the chamfer, would still retain the knob on the screw head. So in a breakage of the knob releasing it from the screw head, which is the failure that's discussed in the patent, there wouldn't be disengagement of the captive screw. Now, this failure that was described and was referenced by the court was if the knob broke off completely. That's a situation that's not addressed by the patent. It doesn't matter whether the situation is addressed by the patent. I think what they're saying is the knob is irrelevant in the accused device to the purpose of the captivation needs. How is the knob functioning as part of the captivation needs in the accused device? So if I go to claim one, for example, of the 095 patent, it talks about the furrow and the knob being slidably and rotatably attached. And that's a relationship through the attachment. The attachment extends down from the knob screw assembly into the furrow washer assembly on the 5-TAC device. The one embodiment that was disclosed in the 095 patent, and it's the same specification for all the patents, has a knob-furrow interface. And the problem still is, as the district court said, the problem is the word attached. The district court didn't say the problem is the captivation needs. And the district court says there has to be a direct attachment. That would also limit any way of extending having an interim piece between the furrow and the knob for the embodiment disclosed. You could still have an indirect attachment, even looking at the embodiment that was disclosed, if you had an extension on the furrow knob with a washer or something else in between. So the main point, though... I understand your argument about attached. What I don't understand is how the knob is working as part of the captivation need. Isn't that what is the corresponding structure in the specification? Well, the captivation means wasn't the term that was up on appeal, Your Honor. It was the term attached. And the attachment is such that when the threaded shaft is in a retracted position, the threaded shaft captivation means that structure prevents the furrow and the knob from separating. And what the district court focused on was that the attached of the knob and the furrow had to be so direct that there could be no other embodiments. Do you have samples? Are they in the record below? I'm asking you. I know you're saying yes. Can you provide them to the court in some sort of timely fashion so that I can actually play with these things and figure them out? Only if they're in the record. Only things that would have been part of the record below. We'll have to check the record for that. There are. There are? We actually used the Montra system here. So the court actually had the screws in her hand to look at. I'd like to do the same thing, if that's okay. Can I ask the two of you to work together to produce them and have them sent to the court? Sure. Thank you. Thank you. Under submission. All rise. The honorable court is adjourned from day to day.